Carl D. Ritzwoller, Respondent, *v.* Gustav Lurie and Gus Lurie & Company, Inc., Appellants.

First Department, December 29, 1916.

Corporations — pleading — sufficiency of complaint in suit by stockholder to rescind subscription for stock and agreement for services induced by false and fraudulent representations.

Complaint, in a suit by a stockholder against a corporation and the promoter and officer thereof to obtain a rescission of the plaintiff's subscription to stock and a return of the money paid by him therefor, and also

to rescind an agreement for services entered into by the plaintiff with the corporation, on the ground that said agreement and subscription were induced by false and fraudulent representations made by the defendant promoter, examined, and *held*, not to state facts sufficient to constitute a cause of action against either defendant.

An allegation that the plaintiff " claims " a fact to be true is not an allegation of the fact.

APPEAL by the defendants, Gustav Lurie and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of July, 1916, overruling demurrers to the complaint.

. *Louis Maxwell Cohen*, for the appellants.

*Charles A. Winter*, for the respondent.

PAGE, J.:

The action is brought by a stockholder of the defendant corporation to obtain a rescission of his subscription to the stock of the corporation and a return of the money paid by him to the corporation for such stock and also to rescind an agreement for services entered into by the plaintiff with said corporation on the ground that the said agreement and subscription were induced by false and fraudulent representations. Plaintiff has joined as defendant Gustav Lurie, the promoter and officer of the defendant corporation, who is alleged to have made the representations relied upon.

The complaint alleges by way of inducement that plaintiff, prior to the incorporation of the defendant corporation, had been in the employ of a copartnership called Gus Lurie & Company as a salesman, under an arrangement whereby he received eight per cent commission upon all of his sales; that in the latter part of 1906 his employer, Gustav Lurie, represented to him that he intended to form a corporation to take over the assets and business of said copartnership, which corporation would have a fully paid capital of $200,000, and that if plaintiff was able to pay for it he would be allowed to subscribe for $10,000 of the said capital, and that plaintiff should then agree to take from the corporation a salary of $50 per week; " that the business of said partnership had been very profitable,

the profits being as high as $65,000 per year, and had never gone below $35,000 in its poorest year," and that plaintiff's dividends and salary would be greater than the sum he was earning by commissions.

It is then alleged " that plaintiff raised said $10,000 in cash and paid the same to said partnership in the month of December, 1906, in advance of the formation of said corporation " and " for the purpose of taking said $10,000 of the stock thereof." The defendant incorporated the company in February, 1907. Its officers and directors were elected and its treasurer reported " in the presence of the plaintiff and defendant Gustav Lurie " that he had received in cash from the following subscribers the following sums of money for their subscriptions, viz., Louis Black, $16,000; Harry Goldstein, $10,000; Hart T. Pincus, as trustee, $15,000; Carl D. Ritzwoller, the plaintiff, $10,000; Joseph Schloss, $10,000; Leicester T. Bernstein, $10,000; Henry R. Tyroler, $4,000; Charles A. Klein, $1,000. It is then alleged that plaintiff thereupon, pursuant to said arrangement, made an agreement with the corporation to work for it as salesman at a salary of $50 per week, and continued to work pursuant thereto during the years 1907, 1908, 1909 and 1910.

The complaint further alleges that plaintiff was induced to sign a certificate stating that $200,000 had been paid into the treasury of the corporation, $75,000 in the said cash payments and $125,000 in property; that plaintiff had no personal knowledge as to the payment of any of said amounts except the $10,000 which he had paid.

The complaint then alleges that the subscription and agreement for services were made by plaintiff solely through the inducements and representations of Gustav Lurie and the corporation through him as its agent; that the statements that said corporation "was to be formed by him with a paid-up capital of Two hundred thousand dollars " were false, and plaintiff relied thereon to his damage; that it was known to said Lurie that the $200,000 was not to be paid into said corporation " and could not be paid in, and that some of said salesmen other than plaintiff and certain of said other persons were not financially able to pay for any substantial amount of stock, and said Gustav Lurie knew that the earnings of said corporation

with a substantial portion of its capital fictitious, could not be so large as it was represented by said Gustav Lurie to plaintiff that they would be."

As to the falsity of the statements it is then alleged that one Loveman owed the partnership $11,000, which indebtedness was put in the form of a promissory note and turned into the corporation "as a partnership asset to make up the amount of $125,000; that said note was turned over to said corporation and is still held by it, never having been *fully* paid." That plaintiff was informed that the net assets of the partnership turned over to the corporation were of the full value of $125,000 and did not know that the said note was included therein. It is then alleged that several of the subscribers named above did not pay cash in full for their stock as stated in the certificate. Then follow certain allegations showing that defendant Lurie was in control of the corporation, though plaintiff was a director thereof, and said Lurie concealed its financial condition from the plaintiff until 1915, when he announced at a director's meeting that he desired to dissolve the corporation and it was resolved that an accountant examine and report upon the books of the corporation, after which plaintiff investigated and learned the facts, whereupon he elected to rescind his subscription, duly tendered his stock and offered to repay to defendant corporation any dividends he had received thereupon, and demanded the cancellation of his certificate of stock, and a return of his $10,000 with interest, and elects to rescind his agreement whereby he worked at a salary of $50 per week and demands that defendant account to him for sales aggregating $350,000 made during the years 1907 to 1910 upon a basis of eight per cent commission less the amount of salary paid to him during said period.

The demand for relief in addition to the above asks that plaintiff's name be expunged from the certificate of payment of the capital stock and from the list of defendant's stockholders and for an accounting.

It will be noted that the only statements of defendant Lurie upon which plaintiff has alleged that he relied in subscribing for the stock are " that said corporation was to have a capital of $200,000, all of which was to be paid in full," and " that the

business of said partnership had been very profitable, the profits being as high as $65,000 per year and had never gone below $35,000 in its poorest year." There is not a word in the complaint which shows that the latter statement is or was false, nor does it appear that the corporation thereafter failed to make a profit of at least $35,000 in any year. Plaintiff alleges a willingness to return his dividends, which shows that some profit must have been made, but whether more or less than $35,000 does not appear. As to the statement that the proposed capital of $200,000 would be paid in full, that is a promissory statement and not a statement of an existing fact. If, from the allegations of the complaint, however, it can be inferred that this was a statement of an existing intention which was false, within the rule affirmed in the case of *Adams* v. *Gillig* (199 N. Y. 317), as claimed by the plaintiff, I am still of the opinion that the subsequent allegations of the complaint are insufficient to show that the failure to comply with the letter of that statement damaged the plaintiff in any way or that the corporation failed to make profits because of lack of capital. It does not appear, therefore, that the alleged statement was false in any material respect which resulted in damage to the plaintiff. The rule applicable to actions based upon false representations is aptly stated by the Appellate Division of the Fourth Department in *Robinson* v. *Syracuse Rapid Transit R. Co.* (100 App. Div. 214, 217), as follows: "In a complaint charging the defendant with fraudulent representations there must be some tangible facts set out connecting the alleged false statements with the transaction set forth and showing that damages have resulted to the plaintiff by reason thereof."

In the present complaint the facts as to the payment in full of the $200,000 of stock in the corporation are set forth. It appears that $125,000 of the stock was issued for the assets of the prior copartnership. It is not alleged that the value of these assets was less than that sum, but merely that a note for $11,000 was included therein which has not been fully paid. It does not appear that the note was scheduled at its full value, or that the other assets of the partnership without it were not worth $125,000 or that the note itself was not properly secured and worth its face value. It further appears that one stock-

holder, Schloss, gave a note for $3,500 in part payment of a subscription of $10,000 which he secured by depositing his entire stock as collateral. As to another stockholder, Harry Goldstein, who subscribed for $10,000 of stock, it is alleged that he "did not at any time pay cash in full for his said subscription to said stock," and plaintiff "*claims*" that said Gustav. Lurie made a present to him of said stock." It is not an allegation of a fact to state that plaintiff "claims" it to be true, so the latter part of this statement may be disregarded. The only other allegation purporting to show that the stock was not fully paid is the statement concerning the subscription of Hart T. Pincus that he did not "pay cash *in full* for his said subscription to said stock, and that the $15,000 of stock subscribed for by him is held and considered by said corporation to be in its treasury as treasury stock." The sum total of the allegations as to non-payment of the capital is resolved, therefore, into a statement that $3,500 was due upon one subscription, and that subscribers to stock aggregating $25,000 did not pay "cash in full." We are left to surmise how much or how little remained to be paid upon these latter subscriptions. The statement would be true if only a few dollars on each subscription remained unpaid, or if any portion of the stock were paid for in property or services and not cash. There is no statement that these alleged failures to pay for stock were contemplated or agreed to in advance of the subscriptions. The complaint accordingly fails to show that any substantial proportion of the stock was not paid in full, or that the corporation failed to be profitable because of lack of capital.

As to the demand that the agreement for services be rescinded no cause of action is alleged. It appears that the plaintiff had merely an "arrangement" with the copartnership whereby he received eight per cent commission on his sales. He entered into an agreement with the corporation to work for fifty dollars per week. Assuming that this agreement was induced by false representations and should be rescinded, by virtue of what authority could the court impose upon the defendant a new contract to pay commissions or continue the old "arrangement" which plaintiff had with the partnership?

The most which plaintiff could recover would be the reasonable value of his services and it has not been alleged that such value was in excess of fifty dollars per week, the amount already paid to plaintiff. Furthermore, the alleged false representations upon which plaintiff relies for a rescission of the contract are the same as those relied upon for a rescission of the subscription and as shown above are not sufficient.

The case of *Mack* v. *Latta* (178 N. Y. 525), relied upon by the plaintiff, is an authority for holding an individual director liable together with the corporation, when the facts alleged state a cause of action.

As the complaint fails to state facts sufficient to constitute a cause of action against either defendant, it is unnecessary to consider the other grounds of demurrer.

The order should be reversed, with ten dollars costs and disbursements, and the demurrer sustained, with leave to the plaintiff to amend the complaint within twenty days upon payment of costs to date.

CLARKE, P. J., McLAUGHLIN, SCOTT and SMITH, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and demurrer sustained, with ten dollars costs of motion on each demurrer in the court below, with leave to plaintiff to amend on payment of costs.